# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Philip Mann, et al., | No. CV-14-02552-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Swiss-America Trading Corporation, | |
| Defendant. | |

Over a number of years, Plaintiffs Philip and Tonya Mann purchased various types of valuable coins from Defendant Swiss-America Trading Corporation. The Manns now regret some of those transactions, although it is not clear which. Despite not identifying the precise transactions at issue, the Manns are suing Swiss-America for, among other things, breach of contract, fraud, and breach of warranty. Swiss-America seeks summary judgment on all of the Manns' claims, arguing the Manns' depositions, as well as the other available evidence, show the Manns have no valid claims.

## BACKGROUND

Swiss-America is in the business of buying and selling "numismatic and precious metal coins." (Doc. 72 at 2). As used here, "numismatic" refers to coins whose value may be based in part on their precious metal content but is also based on their value to collectors due to their rarity or appearance. "Precious metal coins," on the other hand, are those coins whose value is derived primarily from the value of their precious metal content. Swiss-America advertises its coin sales on the radio and it was after hearing a

radio ad that Philip Mann contacted Swiss-America to obtain information about investing in coins.

The Manns made their first purchase from Swiss-America in 2009. In August 2010, the Manns decided to convert their 401(k) holdings into precious metal coins purchased from Swiss-America. This type of conversion is permitted under 401(k) rules and does not trigger any tax consequences, provided the coins are physically held by an authorized third-party vault. Thus, if the Manns wished to conduct this type of conversion, neither they nor Swiss-America could have physical possession of the coins. With this limitation in mind, the Manns completed the conversion and the precious metal coins were held by a third-party vault for a few years.

In October 2012, the Manns became concerned the government might confiscate all gold held by private individuals. According to Philip Mann's deposition, this concern was prompted by "the political climate with Obama and all the stuff he's seizing in the tower." (Doc. 73-1 at 78). This concern may also have been prompted by a pamphlet Swiss-America sent to the Manns years earlier describing the government confiscation of gold during the Great Depression. Because of his concerns with possible governmental confiscation, Philip Mann had telephone conversations with a Swiss-America employee about this topic. The Swiss-America employee allegedly confirmed to Philip Mann that such confiscation was possible. Based on Philip Mann's concerns, the Manns decided to convert at least a portion of their 401(k) holdings from precious metal coins into numismatic coins.

On November 27, 2012, Philip Mann emailed Swiss-America and stated he wanted to "mov[e] forward" with the sale of his 401(k) precious metal coins. In that email, Philip Mann confirmed he wished to "incur the penalty" for selling the 401(k) coins. That penalty would be owed because the sale of the 401(k) coins would trigger tax penalties as an early distribution. The penalty, as calculated by Philip Mann, was likely to be over $30,000. (Doc. 73-20) (acknowledging penalty of $32,200). After selling the precious metal coins, Philip Mann indicated he planned to "convert to silver/gold on

1 hand." (Doc. 73-19). The reference to "silver/gold on hand" apparently meant the Manns were interested in numismatic coins they would have in their personal possession.[1] On January 14, 2013, the Manns completed their desired transaction consisting of having their 401(k) coins distributed from the third-party vault, selling those coins back to Swiss-America, and using the $145,902 in proceeds to purchase numismatic coins from Swiss-America. The Manns received the numismatic coins and they still possess those coins.

After the transaction was complete, Tonya Mann decided to perform a "detailed audit" of the coins and their values. (Doc. 74-1 at 3). That audit allegedly revealed the numismatic coins were not worth as much as the Manns had paid for them. It appears the Manns were confused (and perhaps are still confused) by the fact that the numismatic coins were not valued on their weight alone. (Doc. 74 at 5) (arguing the numismatic coins were valued differently than "the actual value of gold in a per ounce value"). The Manns subsequently asked Swiss-America to exchange the numismatic coins for precious metal coins. The Manns and Swiss-America were unable to reach an agreement regarding such an exchange and the Manns filed the present suit.

The operative complaint alleges three claims. The Manns' first claim is that Swiss-America breached a contract by "failing to provide or secure specific goods that [it] contracted [with the Manns] to provide, namely valuable gold coins." The second claim is titled "Fraud, Negligent Misrepresentation, Fraudulent Inducement, and Negligence." This claim appears to be based on Swiss-America's actions in promoting, marketing, advertising, and selling coins to the Manns. Finally, the third claim is for breach of warranty based on Swiss-America "representing to [the Manns] that they would

---

[1] The purpose of this transaction is not entirely clear because, if the Manns were concerned about governmental confiscation of gold, it is unclear why they wished to conduct a transaction where they would still end up possessing a large amount of gold. Moreover, it is unclear why the Manns wished to change their investment from precious metal coins to numismatic coins. The Manns do not explain the goal of the transaction although it seems they were induced, in part, by a Swiss-America employee allegedly telling them they could hide numismatic coins from "government eyes." (Doc. 74 at 4). That is, they believed that converting to numismatic coins would mean they could retain the coins even if the government made possession of gold illegal.

receive particular types of rare and valuable coins" which they did not receive. The parties conducted discovery and Swiss-America now seeks summary judgment on all three claims.

## ANALYSIS

**I. Standard for Summary Judgment**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). Only genuine disputes will prevent summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not" preclude entry of summary judgment. *Id.*

When ruling on a summary judgment motion, the evidence of the non-moving party is to be believed, and all reasonable inferences drawn in its favor. The party "seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). However, if the non-moving party bears the burden of proof at trial, the moving party's summary judgment motion need only highlight the absence of evidence supporting the non-moving party's claims. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323-25). The burden then shifts to the non-moving party to produce evidence showing there is sufficient evidence supporting its claims. *See id.*

Finally, when deciding a motion for summary judgment, "[t]he court need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). The Court is under no obligation to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); Fed. R. Civ. P. 56(c)(3) (noting a court "need[s]" to consider the cited material but "*may* consider other materials in the record")

(emphasis added). And once a properly supported motion is filed, the party opposing that motion must "identify with *reasonable particularity* the evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279 (emphasis added); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 775 (9th Cir. 2002) ("The efficient management of judicial business mandates that parties submit evidence responsibly."). Therefore, a party opposing a motion for summary judgment cannot merely make broad generalizations and point to the record as a whole to prevent summary judgment. *See Keenan*, 91 F.3d at 1279 (criticizing counsel for providing "multiple citations [to the record] in lieu of simply stating the material facts disputed").

## II. The Manns' Summary Judgment Filings Are Lacking

In seeking summary judgment, Swiss-America filed a motion for summary judgment as well as a separate statement of facts as required by Local Rule 56.1. The Manns filed an opposition but did not submit a separate statement of facts. That failure alone is "fatal" to the Manns' opposition. *Malcomson v. The Topps Co.*, No. CV-08-2306-PHX-GMS, 2010 WL 383359, at *3 (D. Ariz. Jan. 29, 2010). Instead of the required separate statement of facts, the Manns' opposition merely provides a lengthy quote from Philip Mann's deposition and references an affidavit from Philip Mann. That affidavit recounts, almost verbatim, the version of facts recited in the opposition.[2] Neither the opposition nor the affidavit, however, meaningfully engages with the arguments made by Swiss-America.

Instead of citing to applicable law and the underlying evidence, the Manns' summary judgment filings simply make conclusory statements that summary judgment must be denied on each claim. For example, in opposing summary judgment on their

---

[2] The affidavit often conflicts with Philip Mann's deposition testimony as well as the underlying evidence. For example, the affidavit states the Manns' did not intend to incur any tax penalties connected with their 401(k) conversion. (Doc. 74-1 at 4). But during his deposition, Philip Mann repeatedly stated he was aware he would incur tax penalties as a result of the transaction. (Doc. 73-1 at 82-86). In addition, Philip Mann stated in an email he wished to conduct the conversion despite the substantial tax penalty. Thus, Philip Mann's affidavit qualifies as a "sham affidavit" on the tax penalty issue and the Court need not accept it when ruling on the summary judgment motion. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

- 5 -

fraud claim, the Manns state "the sworn affidavit and deposition testimony of Philip Mann set forth above, the representation of facts, including their falsity and materiality, are manifest within this proper summary judgment evidence."  (Doc. 74 at 11).  Such vague references to the underlying record are not a permissible way of opposing summary judgment.  *Keenan*, 91 F.3d at 1279.

In light of the Manns' failure to provide a coherent response to the factual assertions and legal arguments made by Swiss-America, the Court is left with only Swiss-America's view of the facts and claims.  According to Swiss-America, the only transaction at issue in this suit is the transaction that was completed on January 14, 2013, involving the conversion of the 401(k) assets into numismatic products.  Because the Manns do not dispute that view of their claims, the Court will accept Swiss-America's view and confine its analysis to whether the Manns' causes of action based on that transaction can survive.

**III.  Breach of Contract**

To prevent summary judgment on their breach of contract claim, the Manns must point to the evidence establishing "the existence of the contract, its breach and the resulting damages."  *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013).  There is no dispute the parties had a contract regarding the January 14, 2013 transaction.  The Manns have not, however, specified how that contract was breached or the damages they suffered as a result of the breach.  Instead of clearly identifying those crucial elements, the Manns' opposition merely quotes Swiss-America's motion and claims there are disputes of fact.  (Doc. 74 at 12).  That is not enough to survive summary judgment.  Without *any* factual support, the Manns' breach of contract claim cannot proceed.

**IV.  Fraud**

A viable claim for fraud under Arizona law "requires proof of nine elements by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the

hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury." *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010). The Manns have not pointed to the evidence establishing each of these elements. In fact, they have not even identified the most basic requirement for a viable fraud claim: a material false representation.

The January 14, 2013, transaction was meant to consist of the Manns selling their 401(k) holdings to Swiss-America and then buying numismatic coins. That is exactly what happened. Absent *some* explanation from the Manns of how this transaction would support a fraud claim, the Court cannot even tell what it should be analyzing to see if there is sufficient evidence to get to trial. But reading the Manns' filings as charitably as possible, they may be attempting to base their fraud claim on statements by Swiss-America regarding future events, *i.e.*, the alleged possibility of governmental confiscation of gold. But such statements cannot support a fraud claim. *Arnold & Assoc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003) (fraud cannot be based on "statements concerning future events"). Alternatively, the Manns may be trying to claim statements of opinion were fraudulent. But again, that theory fails as a matter of law. *Page Investment Co. v. Staley*, 468 P.2d 589, 591 (Ariz. 1970) (opinions are "not actionable as fraud"). The Manns have not identified any factual basis for their fraud claim and the only two possible bases that might be implicated are fatally flawed. Thus, Swiss-America is entitled to summary judgment on this claim.

**V. Negligent Misrepresentation and Negligence**

Under Arizona law, claims for negligent misrepresentation and negligence are closely related. "A claim for relief for negligent misrepresentation is one governed by the principles of the law of negligence. Thus, there must be a duty owed and a breach of that duty before one may be charged with the negligent violation of that duty." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 411 (Ariz. Ct. App. 2014). The Manns have again failed to identify the factual basis for their negligence claims and the Court cannot divine a basis. To the extent the negligence claims are based on statements

regarding future events, they fail as a matter of law. *Arnold & Associates*, 275 F. Supp. 2d at 1029 ("A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation."). And with no other explanation of the statements made or actions taken which breached a duty of care owed to the Manns, the negligence claims cannot survive summary judgment.

**VI. Breach of Warranty**

The Manns have not identified the warranty at issue nor have they identified how Swiss-America breached that warranty. In his deposition, Philip Mann made vague statements about there being both a written and oral warranty but he did not explain how those warranties were breached. Vague claims are not enough to survive a properly supported motion for summary judgment. Moreover, the parties' written agreements expressly disclaimed all warranties. Disclaimers like this are permitted under Arizona law. *See Seekings v. Jimmy GMC of Tucson, Inc.*, 638 P.2d 210, 215 (Ariz. 1981). The Manns' breach of warranty claim fails.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 71) is **GRANTED** and the Clerk of Court is directed to enter judgment in favor of Defendant against Plaintiffs.

Dated this 13th day of May, 2016.

Honorable Roslyn O. Silver
Senior United States District Judge